Thank you, Your Honor. May it please the court, Daniel Tenney for the federal government. I'd like to reserve five minutes for a rebuttal, please. I'd like to start with appellate jurisdiction. The district court did issue a final judgment here. There was an order that resolved the legal dispute and the district court held out the possibility that the plaintiff could request additional injunctive relief if it wanted to go to trial and supply more evidence. The plaintiff declined that opportunity, and so the case was ended at that point. So the judgment is final. There's nothing left for the district court to do. There's no issues that remain open. Judge Cardone Well, let's explore that a little bit further because I think it's an understatement, at least for me, that this record is very confusing in terms of what was decided when and what's left to be decided. Now, when the district court granted the partial summary judgment, it appeared to think that there were some issues left to remain and there was a trial date scheduled, right? Daniel Tenney Well, what the court said was that on the record before the court at the time, it didn't think injunctive relief was appropriate. It thought that the plaintiff had requested in advance of that hearing or in the course of that hearing that if the court didn't give it injunctive relief, it wanted an opportunity to put forward more facts to get that relief. And so the court simply honored that request and said, if you want to go to trial and present more facts to get injunctive relief, you can. And then... Judge Cardone So what were some of the factual issues that the district court thought remained to be resolved? Daniel Tenney It wasn't clear to me that the court thought that there were more issues. The plaintiff had made that request and the court said, you know, I don't have on this record enough to justify an injunction. If you think you need an injunction and you can put more facts forward, I'm going to give you one last opportunity is my understanding of what happened. And then the plaintiff ultimately decided, you know, withdrew that request and said, okay, no, we're content with what the court has already done and the case is over. I mean, I think the really relevant point here is simply that the cases that this court cited in its order asking about appellate jurisdiction are cases where one or the other parties or both had reserved issues and said, depending how the appeal comes out, we might revisit these or there's a dismissal without prejudice, something like that, in order to expedite the appeal, but still leave something open at the district court level. That's not what's happening here. And I've discussed this with plaintiff's counsel and obviously you can ask him too when he gets up here, but they don't regard themselves as having preserved a right to seek more relief, to do more in the district court in this case. So it should be treated more as if whatever they had left of their case, which wasn't... There's nothing in the record to say the plaintiff is giving up these claims with prejudice. There's nothing, is there, well, let me put that as a question to you. Is there anything where the plaintiff is saying we give up these claims with prejudice as opposed to being able to raise them at some other time? Because if it's the latter, then I think the case law is pretty clear it's not a final order. There has to be a disposal of all claims. Your Honor, it doesn't use either formulation, either saying it's with prejudice or saying we reserve these claims for later. The stipulation just says the court should enter final judgment on the terms. I know what that says, but if you look behind that at the prior orders of the district court, there are a lot of issues that have been, there are a number of issues that were never resolved in the district court. And unless either party is willing to say withdraw them with prejudice, it couldn't be done. But that's one question. The second question is why didn't either side ask for a Rule 54B order? That would have solved this issue. Your Honor, to take the second question first, the parties understood that, didn't understand this to be a 54B order because the parties didn't understand there to be anything more for the district court to do. You would enter a 54B order if you said we want to take this part of the case up on appeal, but there's more we're going to do in the district court. The parties made quite clear there was nothing more that the parties intended to do in the district court. And I think to go back to the first part of the question, I'm not sure what issues remain to be resolved. The only thing the district court identified was, it can talk about the merits of that later, but it said at this time I'm denying your request for injunctive relief. But you had said that you might be able to put forward more evidence in order to convince me that you were entitled to injunctive relief. Then the plaintiff entered the stipulation which said no, we're going to go with what the court has already done and you can go ahead and enter judgment. Now, there's no document that says and the dismissal of this is with prejudice, but the court had already said I'm not giving you injunctive relief on the record you've got. At this time. Right, and subject to if you want to submit something further, and then they didn't submit anything further, so that's the end of it. If they had said we don't have anything further, Your Honor, and the court had said okay, then my decision is final, no injunctive relief, then the case would be clear and we submit that what actually happened is not really materially different from that other than it was an agreement of the parties rather than the plaintiffs unilaterally coming forward and saying they didn't want injunctive relief anymore. Counsel, you say the stipulation says that final judgment shall be entered. Can you show me where it says that? I mean, the parties submitted a proposed judgment. I've got that here, but the stipulation, and the exhibit A, I think the word final appears in there. Well, it says judgment. It doesn't say final, that's true. I think, isn't that the, I mean, isn't that kind of the problem here is that we don't, yes, it certainly says judgment. There's a judgment as to something, and I understand the argument you're making, but we're looking at the stipulation and the exhibit A, and I'm not saying it doesn't say what you're saying, but I'm not sure it does either, I guess is what I'm saying. So if you can walk us through the stipulation, the judgment, where it makes the point you're making. You said there's a final judgment, we're done, there's nothing more to be decided. I do see on the stipulation, paragraph six says with the vacation of the trial, no issues would remain for resolution by this court. Is that the language you would want us to hang your argument on? Yes, Your Honor, and I think that language in the context in which the, I mean, in the context of the reason the stipulation was entered into the first place, the judge, as I said, the district court had held out one thing that the court said. There's this one more thing that I could do. If the plaintiff had said ahead of time that the plaintiff wanted an opportunity to prove, to get an injunction, if you didn't think it was warranted on this record, and I'm going to honor that request, then the parties come back and say, no, we're vacating the trial, meaning we're abandoning the opportunity that the court gave us, and with that done, there are no issues remain to be resolved. Please enter judgment, and our view, and I believe plaintiff's view too, is that that makes it a final judgment, because there's nothing more for the court to do. Okay, you move for summary judgment. That is on all claims, correct? Right, I mean, there were a series of motions. Yeah, but the plaintiff only moved for partial summary judgment, and the court granted that, but it didn't say exactly what it was granting or not granting, and there's cases that say without a Rule 54 certification, orders granting partial summary judgment are not final, but this record only shows that SIGA moved for partial summary judgment, which by its words implies that there are some claims as to which it is not seeking judgment, and as far as I can see, that's the way the record stands when the notice of appeal was filed. Your Honor, SIGA got some relief. The government got some relief. There was nothing else the government was asking for. You're right about that. I'll accept that as to your position for purposes of this one. Right, and there was potentially one more thing that SIGA was asking for, and then it abandoned it. What does this language mean in the stipulation? The parties have separately entered into a tolling agreement addressing the treatment of demands for payment issued by defendants to SIGA, so those demands for payment were within the scope of the lawsuit that then got dismissed, but it might be revived later in a separate lawsuit. Is that what the parties were contemplating with that language? I don't believe so, Your Honor. I don't think that refers to claims that were part of this lawsuit. I think as a stipulation between the parties as opposed to something they were asking the court to do, the parties were just noting that the tolling agreement remained in effect so that there are a lot of cases that are the government has stopped processing those awaiting the outcome of these issues. Those aren't things that were presented to the district court. There were three claims that were still live before the district court, and the district court ruled on those three claims. There are other claims that might have, in the administrative process, be held in abeyance, but those are not claims that were part of this litigation ever, and so that wouldn't be a reason that this wouldn't be a final judgment. Okay, but just come and come back. This is the order of January 5th, 2017, all right? The court grants SIGA's motion for partial summary judgment, okay? Vacates all future dates of deadline, etc. Within two weeks of the date of this order, the parties should submit a proposed schedule for adjudicating all remaining disputes in this action. The district judge clearly was under the impression that there were remaining disputes, and he set the schedule that was referred to before, and counsel, you just didn't want to go through with any more proceedings in front of the district court, but that doesn't, without actually dismissing the claims, I don't see how you have a final order. Well, your honor, there isn't a claim for, you know, there are substantive claims have been resolved, and I hope to get to the merits of those, but the only thing that was, I mean, the only thing that's been identified that I'm aware of that was still unresolved was this possibility that even though the court at the time said they couldn't get injunctive relief, that potentially with further factual development, they would be entitled to that relief. And then they said, it turns out we don't want to do that, and there are no more issues to be resolved. We're not asking for anything further, and please enter judgment. And, I mean, if the court sends it back, then, you know, they can dismiss it with prejudice more it is that they're dismissing with prejudice at this point, but obviously the parties could do that, and then we would be right back here, but we submit that that's not necessary at this time. You're right about that. I have another question for you, just as procedure. So this is, there are a lot of very substantive issues here, and you make the point that since this case was started, Congress has passed a new law providing for administrative agency review of claims of this that's that's right. I'm not sure if the legislation was after that, but it took effect afterwards. It wouldn't apply if it was after the claims made in this case, so right. The regular the implementing regulations certainly have is in view of this issue we have about appealability and in view of the disputes about what's in the record and the of course the background issue of preemption. Would you, and I'll ask the same of your colleague, be interested in mediating the whatever remains in this case as part of the Ninth Circuit mediation program rather than continue the litigation because future disputes of this nature are going to be dealt with administratively, and it would seem to me that whatever is left in the record in dispute, and we at least there's some argument there is some, that might be best dealt with with mediation rather than going back in front of the district judge and having more arguments. Or would you be willing to talk to your colleagues in the Department of Justice and consider that? Well, I mean we I can't speak to the details of the mediation under this court's rules. There was a mediation in this case under this court's mediation program already. Yes, your honor, and then it was ultimately released from mediation. So I'm not sure that we want to go back there. Just to take a step back from your question, I think the fact that circumstances have changed on the ground is part of our argument for why this declaratory relief was particularly appropriate on the specifics of how the interaction between CEGA and the government works with respect to individual disputes. But as to the core threshold legal claims that CEGA has, which is basically that they're not required to pay at all ever under the Medicare secondary payer provisions for a were resolved by the district court in the government's favor. CEGA adheres to its position. We adhere to our position and we submit that that dispute is right for this court to adjudicate. And we don't need more proceedings in the district court. We don't need mediation for that. What we need is a resolution by this court. That gets to the preemption issue. So the district court held there was preemption. So you think that on the merits that that finalizes the case in your favor or on any disputed issue. Is that correct? On that issue, Your Honor, I mean, there were basically two pieces to this case. There was CEGA's claim that they should never have to pay either because their statute exempted them or because there was a timing provision that the state timing provision that the government didn't comply with. And the district court resolved all those issues in our favor. Well, is it your position that the district court's decision on preemption settles the case as to all the CEGA's claims against the government, against the federal government? No, Your Honor, because there was also the separate, there were the three individual claims and the argument that there was this practice. We submit the district court ultimately recognized there wasn't such a practice, but there was that claim too. But that claim too was resolved by the district court. And that's why we're appellant here because the district court issued declaratory relief against us. It ruled for us on the preemption on the broad sweeping claims. And that is, I agree, that's the core of... Preemption and whether Medicare needed to comply with the claim filing requirements. Right. Those were, you want us to affirm those rulings and you want us to reverse the declaratory relief with regard to the billing practices and procedures? Correct. That's what we're asking for. And that is the entire case, those two issues. There's the CEGA's broad claims and then there's our, and then there's the declaratory relief on the billing practices and setting aside these three individual claims. I'm into my rebuttal time. I do want to say something about the merits though, so I'm... Right. On the preemption issue, CEGA is arguably not a kinto workers' compensation plan, is it? Well, there's a few ways to look at this. I mean, the regulations talk about entities that assume legal liability. The regulations also talk about arrangements of one or more entities to pay workers' comp... I mean, the statute and the regulations together are talking about a workers' compensation plan as a primary plan. What happens in practice is in workers' compensation insurers owe money to individual beneficiaries. If they can't satisfy those obligations, then CEGA takes over those obligations. And so CEGA could be construed as part of the workers' compensation plan. It could be construed as its own workers' compensation plan. But just to be clear, what Congress was doing here, and it's reiterated over and over as the 11th who also is eligible for some other coverage. The Medicare secondary payer provisions are designed to ensure that that other entity pays. And what CEGA is saying here is even though there's no dispute that CEGA has an ongoing responsibility to pay medical claims of these particular beneficiaries. And what CEGA is saying is just because Medicare would also have an obligation, then CEGA doesn't have to pay anymore and Medicare is supposed to pay instead. That's the opposite of what Congress was trying to do. And in terms of the specific language, I mean, the first circuit in the Rhode Island insolvency insurers fund resolved this same issue because what they were saying there is we're not really the insurance... It's very limited analysis in that case. I mean, they didn't say much, but the argument they were addressing was the same argument CEGA is raising here, which is we're not really the insurance policy. There are things that insurance companies do that we don't do. That's what CEGA is arguing. That's what was argued in the first circuit case. And that's not what matters under the statute and the regulations. What matters is are you assuming legal liability for workers' compensation benefits? And that is exactly what CEGA does. And if it weren't the case that this counted, then if an insurance company said, okay, we're going to take on these responsibilities, but then under certain conditions, we're going to transfer them to somebody else. And when we transfer them to somebody else, that other entity doesn't count as a workers' compensation plan. And therefore, Medicare will become a primary payer, even though the structure of it is the same. There's still another entity paying workers' compensation benefits under a claim of legal right to these same Medicare beneficiaries. There is no indication that Congress would have intended that Medicare would be primary just because they've arranged the way that the person is going to be paid in this different way. And that's essentially CEGA's argument here. They're saying, because the person is not being paid by the entity that they contracted with, but there's an arrangement that under certain circumstances, they're paid by somebody else, that doesn't count anymore. But that's exactly contrary to the regulation, because the regulation says if there's an arrangement by one or more entities to pay the benefits or to assume legal liability, and I'll get the exact language so I'm not paraphrasing it, Your Honor. It says, plan means any arrangement, oral or written, by one or more entities to provide health benefits or medical care or assume legal liability for injury or illness. There is no way that CEGA does not qualify under that definition, Your Honor. Probably construed. It does appear to fit. But let's hear from CEGA's counsel. Okay. Thank you, Your Honor. May it please the court. My name is Stephen Whitmer. I'm counsel for the California Insurance Guarantee Association. I'd like to start with the jurisdictional question that was addressed earlier. I will agree with counsel that all the issues at the lower court have been resolved. There was one issue that remained open, and it was the injunction. What the district court said is that that injunction was potentially unlikely to be granted because there was no evidence that the government wouldn't actually ultimately comply with the declaratory judgment. So the judge says, if you want to go forward to a trial to prove that the government's not going to comply with my order, we can do that. At that time, CEGA withdrew that claim. The stipulation was entered into, and we moved to this court. Now, just to be clear, CEGA intends to withdraw any of the injunctive relief with prejudice. If it wasn't clear from this record, we want to make sure that's clear now. And under this court's rulings, both in the Evan case in 2012 and the Dannenberg case in 1994, this court has taken a very pragmatic approach to this question. If there's something left at the district court below, or even potentially left, that's one thing. But if it can be clarified even here at this podium that there's nothing left below, and the parties are in agreement on that, then we respectfully submit this court should take the pragmatic approach that was set forth in Evan. With respect to the merits issues, I think the fulcrum question here is whether CEGA is a primary plan, and Judge Nguyen identified that issue. Well, so let's get to that. Counsel did read the definition of a plan. Any arrangements, I think, oral or written to provide health benefits or medical care or assume liability for injury or illness. And so, as has been briefed, and counsel raised the Rhode Island case with the First Circuit involving a pretty similar state guarantee association. So can you just a few minutes ago, there's a few different ways to look at this. And the Wyeth Supreme Court decision is extraordinarily important here, because what Wyeth teaches is if there is a way to look at this issue where there would be no preemption, then this court is implored and directed to find that way. So as we're looking at whether CEGA is a primary plan or not, the question is, is it a clear and manifest direction from Congress that the CEGA Act is intended to be preempted here by the Medicare Secondary Payer Act? And we respectfully submit that the answer to that question is a resounding no. The statute at issue, the Congress-enacted statute that we're talking about here today is the definition of primary plan, and it needs to be a workman's compensation law or plan. If this court finds a way to find that CEGA does not fall under that umbrella any way at all, then under Wyeth, we need to find that. Now, CEGA is not a worker's, it is not an insurance company. It sells no insurance. It issues no policies. It makes no profits. And it assumes no contractual obligations to insurers. To be clear, if an employer in this state wanted to go get worker's compensation insurance, you would go to the labor code, and that is where all the explanation of how it works. In juxtaposition, the CEGA Act is under the insurance code. There's no overlap between the worker's compensation laws and CEGA's Act in that respect. Now, what is the word plan in isolation? If there's any arrangement at all, then counsel's saying you've got to find in favor of the government. But respectfully, that's not the way that statutes are supposed to be read. What this court is asked to do is read plan in the context of worker's compensation law or plan. And for the reasons we've explained, CEGA simply does not fit that That was a very limited paragraph. And what the court did there is it looked... But it does say that the argument that you're presenting today was presented to the First Circuit and it rejected that, albeit the reasoning was brief. It did say that upon the declaration of insolvency, the fund is deemed insured to the extent the obligations under the policy on the covered claim. So I know you quibble with the word deemed, but I think in effect, this is similar. So would we be creating a circuit split if we were to rule for CEGA? We respectfully submit it would not be a circuit split because the facts in the First Circuit decision are significantly different. The First Circuit relied exclusively on the word deemed. And the fact that the guarantee fund there was deemed the insurer. If that were the case here, we'd be having a different discussion. The California statute is substantially different. There is no such deemer provision. In fact, the California statute stands for something very different and provides very explicit limitations on the types of claims that can be paid in this state. And to be clear, under the CEGA Act, CEGA is not allowed to pay any claims that are brought by either state or the federal government. So under that CEGA statute, the question is, does the Congress edict in the Medicare Secondary Payer Act trump the CEGA statute? Is it clearly and definitively preempted? And for the reasons we've discussed, it's not. The First Circuit decision has a deemer provision and the court relied exclusively on that hook. That just doesn't exist here. Had the First Circuit not had the deemer issue, they could have gotten to the same Can I have you go back to the jurisdictional question? Absolutely. Because you're talking about the confusion of the record here. Council had clarified that it's seeking to essentially have this court affirm the preemption analysis and affirm the timeliness or whether the government really needed to comply with the claim filing requirements. But it's seeking a reversal of the district court's declaratory relief. And on that order, the district court indicated that the court finds it appropriate to issue a limited judicial declaration regarding CMS's interpretation of the MSP, essentially the billing practices. So the government would like a reversal of that. But on the billing practices, the district court thought that there were still factual issues that needed to be resolved. And I still don't have a clear understanding on at that point in time, the district court thinking that there were still factual issues to be resolved by way of a trial. And then the party stipulating all of that away. What happened to the factual issues that remained at least in the court's mind and apparently in the party's minds as well at that time? That's an important question. With respect to the declaratory judgment, the district court there are no additional issues that were needed. And the court explained that. That issue was clear, crisp, and completed. What the court said is there's additional factual issues we would need to know the answer to if we're going to step into the injunction category. And the court said we would need to address, for example, proof that the government will not comply on a going forward basis with my declaratory judgment, the court said. That was the only factual record that remained open. Because I think there's some confusion on this record, I'd like to clarify what exactly the district court was saying. The government testified in a deposition, Mr. Ian Frazier, who had worked for the government for 15 years dealing with these issues, so he was the right witness to be in the chair. And Mr. Frazier said in a nutshell that when we're sending out these reimbursement requests, there are, I'm paraphrasing here, X's and O's. The X's are the parts that fall under the workers' compensation policies, and the O's are the parts that don't. My nomenclature, not his, but you get the point. And what Mr. Frazier said is when we send these out, we can't separate these diagnosis codes, the X's and the O's. We can't separate them. It's too difficult. We don't know how to. So they're put together in the same bucket and sent off to CEGA. CEGA said, well, hold on a second. Why are you asking us to pay for O's when it's clear that CEGA doesn't owe the O's? And in the Caldera decision in the Fifth Circuit that we cite in our papers, if there is something like diabetes in one of the examples, or if you saw the NCIGF amicus brief, they were talking about lice. If there's something, if somebody goes to a doctor and asks the doctor, hey, I need some help with a workers' compensation injury, but while I'm there, oh, I'd also like some help with lice or diabetes or smoking or whatever that has nothing to do with the workers' compensation injury, then there's two things going on at the doctor's office, the X and the O. What the district court said is that the government needs to figure out a reasonable way to try to separate out the X's and O's. Otherwise, what's happening here is that the government is billing for the O's, which are clearly not owed by any primary payer. So the district court just said, be reasonable. Don't charge for O's when you know O's aren't owed. And government, when you come in and testify and say it's just too difficult, I'm not buying that, he said. Come up with a reasonable way, he gave an example. How about doing some kind of balancing? Maybe 50-50 weighing. It doesn't have to be perfect. He said you have to make some effort to not charge for the O's. And that's all that happened there. But I think, as we explained earlier, there are three key issues. We've talked about two of them. We've talked about the primary payer issue. We've talked about the declaratory judgment. But what we haven't talked about is the late-filed claims. To be clear, either the primary payer issue or the late-filed claim issue, if resolved in SIGA's favor, resolves this entire appeal. So each of these issues are independently important. The late-filed claim issue is something that has really already been addressed by this court. This court in California 1 and in Bresson came up with a clear direction. You will not use Summerlin, this court said, and not look to Summerlin unless you're dealing with a claim from the government that's already alive. Put another way, if the government never meets the condition precedent to have a claim in the first instance, then the Summerlin principle does not apply. Now, the government is relying almost exclusively on Summerlin to say that the late-filed claim argument is invalid. This court issued rulings in Bresson and California 1 explaining why Summerlin has no impact on a case like this one. And I would point out there's a third case that came down from the 11th Circuit after the papers were already that is the SACULO case. It's at 913 F3, 1010. And the SACULO case along with Bresson and California 1 all stand for the same principle. If a valid claim never materializes, then Summerlin doesn't come into play. So now that we have the legal principle, let's take a step back and apply it to the facts of this case. Here the government never had a valid claim in the first instance. This is not a case in which SIGA is seeking to extinguish a valid claim. We're just telling the court the government never had a valid claim in the first instance. How is that? SIGA's statute makes clear that if a party, the federal government or anyone, it can be any party, including the SIGA, a covered claim, there is a condition precedent. And that is going to the liquidator in the underlying liquidation and timely filing a claim with the liquidator. Once that's done, the government's potential claim comes to life. Now, just so I don't step on our prior argument, this is assuming you disagree with us on the primary payer issue. Because if you do agree with us on primary payer, you never get to this issue, the whole appeal. All three elements go away if you agree with us that SIGA is not a primary payer. But if you disagree, then we're going to look at this late filed claim issue. And respectfully, this court has already provided a clear roadmap about how you would or would not apply Summerlin. And I think this perhaps got overlooked by the government because in the response that they provided to our brief, we explained, we said, look, this is a Bresson case. The government never had a valid claim in the first instance. And their response brief, they didn't address it. In fact, what the government did is they addressed the U.S. Supreme Court standard in California too. But that deals in situations where there already is a valid claim. What we're inviting this court to look at is what I think is dispositive of this entire case is that this is a Bresson case. Now, let's go back to Wyeth and counsel's statement that there's a few different ways to look at this case. Because what Wyeth is saying is if there is even a sliver, any sliver of light that gets us to a position where we don't have to then that's where we ought to go. And importantly, this is precisely the kind of case where preemption should not apply because we're dealing with insurance. And as this court is well aware, insurance is a matter that is typically reserved for the states. So the question we have to ask ourselves here, why is it that the California legislature is not allowed to come up with a insurance field and say, hey, we know that ultimately all of CEGA's costs are paid for by the policyholders of this state. Who's going to pay for these costs? It's either going to be the taxpayers of the federal government or the policyholders of the state of California. The California legislature has made a decision that in this state, these types of claims, any federal government claims should not be paid. Why is it that that finding or that edict by the California legislature should not be honored here? The only reason it would not be honored is if you have to, have to find preemption. And Wyeth is telling you and telling us here today, there's a clear roadmap here. So as you're considering and looking at what primary payer means and what workers' compensation plan or law means, the lens through which that should be viewed is simply, is there a way, any way to see it the way that CEGA is presenting it? And we respectfully submit, there's not only a sliver, you can drive a truck through how clear the hole is that CEGA is not a primary plan. I don't know if the issue is that clear, but I understand your and that was raised and I wanted to give you a chance to address that as well. Your Honor, our position always on mediation, it's always a good idea. And we always, and I strongly advise it to my client in every case. And I did in this case as well. And as Mr. Tenney correctly states, the parties went to mediation, parties made an effort, but it wasn't successful. And that's why we're here today. And we're respectfully asking that this court resolve the dispute. We do believe it's ripe. We have made clear that there's nothing left below, that that injunction claim has been dismissed, at least we're making clear here, intends to be dismissed with prejudice. So we respectfully request that this court issue a ruling on the three substantive issues. And as we said, if you find that CEGA is not a primary plan, go no further. If you find that it is, you go to point two. And if you find that it's a late filed claim, then go no further. And if you get past one and two, for whatever reason, this court doesn't agree with CEGA on one and two, then you get to issue three. And you find that this judge, a very smart, focused judge, figured out that what was going on, not only with CEGA, but Medicare's plan of saying, we don't want to try to figure out how to separate out X's from O's. It's a serious problem. Why should the federal government be allowed to charge for something that they know that isn't owed? It's all a court saying. District court said we can't do it anymore. Thank you for your time today. We appreciate your consideration of these issues. All right. Thank you very much, counsel. Let's put a couple of minutes on the clock. Thank you, Your Honor. On the primary plan issue first, this is fundamentally not a question of whether it's preempted or not. It's a question of the definition of primary plan. The fact that the question is whether arrangements of this kind count in the definition of primary plan. They clearly do. There's a workers' compensation law. Our plan is the statutory language. The regulation defines plan in a way that is natural in keeping with the text and purpose of the statute and clearly encompasses CEGA. In terms of the timeliness issue, the government won Bresson, just to be clear. This court said when there's a federal claim, then the state time limit doesn't apply. The Medicare secondary payer statute, it's A1 of our addendum. It says, a primary plan and an entity that receives payment from a primary plan shall reimburse the appropriate trust fund for any payment made by the secretary under this title. And then it goes on. That's a federal right that the federal government has in its sovereign capacity to obtain payment from CEGA. And there's no basis in the question of covered claims that would govern state law rights, rights in the insolvency proceedings, rights that arise out of state law. That's not what this is. That's not what it was in Bresson. That's not what this is. Finally, on the declaratory judgment point, the court recognized that it didn't understand what was going on. It said at page ER13, when it decided not to issue an injunction, it said that it recognized that it didn't have a complete understanding of critical issues, that an injunction would significantly disrupt the administrative process because it would inject the court into future administrative proceedings. That was all right and good reason not to issue an injunction, but it's also a reason not to issue a declaratory judgment. If the court doesn't understand what's going on, I see my time is up. I just finished my sentence. If the court doesn't understand what's going on, if there's going to be a new administrative process now in which these issues can be worked out, in which CEGA can work with the contractor and figure out what's owed and what isn't, that should be allowed to proceed unencumbered by a declaratory judgment from a court that admittedly doesn't understand the picture. Unless there are any further questions. Thank you very much both sides for your argument in this interesting case with the difficult issues. The matter is taken under submission and we'll issue a ruling in due course. Thank you, counsel.
judges: Nguyen, Owens, Baylson